Case number 21-3003 United States of America v. Julien Richardson at balance. Mr. Kaplan for the balance, Mr. Birney for the appellate. Good morning, counsel. Mr. Kaplan, please proceed when you're ready. If it pleases the court, my name is Matthew B. Kaplan. I represent appellant Julien Richardson. Your Honor, in our view, there's two principal issues in this case. Firstly, whether the sentencing guidelines were properly applied. Secondly, whether procedurally this court can reach that issue. The government contends that it cannot reach the issue whether the guidelines were properly applied because of the waiver that my client executed prior to his plea. In our view, that waiver does not bar disappeal and that's for two independent reasons. Firstly, the court cannot find on this record that Mr. Richardson knowingly, intelligently, voluntarily waived his appellate rights. And that is so because the district court not only didn't discuss the plea waiver with him, but it affirmatively misrepresented what the plea waiver, what was in the plea waiver. Specifically, the district court indicated that he was, Richard, Mr. Richardson was giving up his appellate rights because of the fact that he was pleading guilty. Whereas, of course, that was not accurate. He was giving up certain appellate rights because he had agreed to in his plea waiver. But that's not what he would have understood. And the discourse precedent indicates that a defendant is entitled to rely on a reasonable understanding of what the trial judge tells him during the sentencing. There was no misleading here, was there? Respectfully, your honor, I think there was because I think that the trial judge told Mr. Richardson that as a result of your pleading guilty, you're giving up all these appellate rights. But in fact, it wasn't because he was pleading guilty. It was because he had entered into a plea he could have simply pled guilty and not have given up those rights. I'm not quite understanding how that prejudiced your client, the advice that was given by the court. Because how is it, even if we take the assumption that what one would naturally construe from the court's statements was that the waiver came about by result of the guilty as opposed to the appeal waiver. How did that end up prejudicing your client? Well, your honor, I would say it's a material prong of the plea agreement. I think specifically the prejudice would be is, you know, he had a choice. He could have gone before the court and he could have gone to trial or he could have simply pled and retained his appellate rights. And, you know, that was a decision he was entitled to make and he was unable to make it because he didn't, as far as the record shows, he didn't understand what the plea agreement was. What didn't what court told him explain the relevant part of the plea agreement? He went into the waiver in the portion you observed in your brief, didn't he? I don't think, your honor, it explained, I mean, it didn't, the trial court did not explain at all, didn't mention the existence of appellate waiver in the plea agreement. And what it said is, I think it said quite clearly, because you're pleading guilty, you're giving up these appellate rights. And I think the, a reasonable defendant would have understood that anyone who pleads guilty gives up these appellate rights. And that was not the case at all. Um, what you're saying is you distract the plea? I'm sorry, your honor. So we should distract the plea, send it back to start over? No, your honor. I think what this court has done in a number of cases is when it's found the defect in the plea agreement, it doesn't vacate the plea, but it remains for re-sensing under the proper terms of the. Well, you're saying that he's prejudiced by not having had the chance to plead? Straight up, I guess. I'm not sure why what she said wasn't adequate, because she's pleading guilty plea, but even assuming it's not, I'm still a bit confused as to how he could have been prejudiced by not being told it was part of the plea agreement when he had signed the plea agreement that added in it and had counsel and heard this advice in court. It's a little hard to follow, counsel. Well, your honor, I think the point is simply that he, you're right, there is a written plea but the case law and the precedent says it matters a lot. You can't just look at the plea agreement, you've got to look also at what happened in the hearing and what the trial judge said. One other thing I'd like to just mention briefly is, you know, aside from this waiver issue, the plea agreement issue, it's also in our view not enforceable because it's the result of ineffective assistance. Counsel didn't point out to the trial court. I'm not sure again what exactly it is counsel didn't do. I mean, the date on which your client claims to have ceased criminal activity was actually discussed in court. It wasn't just there, but what do you say counsel didn't do? Well, principally, your honor, what we say counsel didn't do is the money laundering guidelines are clear. You look at, you don't look at the law as that term is normally defined in the sentencing guidelines. You look at the amount of funds laundered and, I mean, that's what it says and the case law says that what it says is what it means. But the trial court and the pre-sentencing report all in the government all seem to think that the relevant issue is the loss, as that term is broadly defined in the sentencing guidelines, is what mattered. And in our view, trial counsel have an obligation to actually read the sentence. See, that's not what it says. It says you look at the amount of money laundered, you would see that that portal network was actually laundered was less than $550,000, which is a break point in the sentencing guidelines. Am I right, counsel? And on that issue, the only decisions that specifically address frozen funds go against your argument on the reading of the guideline? I think that's correct, Your Honor, but those are all decisions prior to the clarification of the sentencing guidelines. And I think there are newer decisions to say that the guidelines mean what they say. You look at the amount of money laundered. And just briefly, I point out what happened here is, you know, there were two separate schemes. One was the fraud scheme. As a result of the fraud scheme, processors overseas had money deposited into the account controlled by my client. But my client didn't put the money. And as to the $95,000, which would bring that amount over the $550,000, he didn't do anything to that money. He never laundered it. To do money laundering, you've got to do some type of financial transaction. And my client didn't do that. Financial transactions he did were funds that totaled, with respect to funds, that totaled less than $550,000. If there are no more questions, I'll reserve the remainder of my time for rebuttal. Okay. Thank you, Mr. Kaplan. We'll hear from the government now. Mr. Bernie? Thank you. May it please the Court, Kevin Bernie of the United States. I'd like to discuss the waiver issue first, because that was the bulk of the time that Appellants Council went on and was asked about. So first, the waiver here is enforceable. And it's already been pointed out that Mr. Richardson signed the agreement he's well-educated, he's completed two years of college, he dated and initialed each page of the agreement. And of course, Liam Jackson has made clear, this Court's precedent, that we look to the entire record as to whether a waiver is knowing, intelligent, and voluntary. But just on this point, in terms of this issue that the trial court misrepresented the plea waiver, which I think is Appellant's main argument. So what the trial court said, and this is JA18, is that, so do you understand that by pleading guilty, you are not only giving up your right to a trial, but you're giving up your right to appeal. And you're not allowed to say, I was improperly convicted. Then the court says, the only basis that you can appeal is if I sentence you to more than the law would permit me to sentence you to, or if your lawyer was ineffective in connection with your sentencing. So the trial court has essentially laid out two exceptions for Mr. Richardson. And both of those exceptions are in the plea waiver. The plea waiver, this is JA46, essentially says that Mr. Richardson is waiving his right to appeal the sentence, except the extent that the court sentences him to above the statutory maximum. The trial court explicitly mentioned that one, or guidelines range determined by the court. The court didn't mention that one, but of course he was not sentenced above the guidelines range. He was ultimately sentenced below the guidelines range. And then the last exception that the plea waiver mentions is that he can appeal on the basis of ineffective assistance of counsel, but not to raise other issues. And again, the trial court essentially stated that as well. The trial court said that he could appeal on the basis of ineffective assistance of counsel in connection with his sentencing. And that's exactly what he's doing on appeal. He's saying that his counsel was ineffective in connection with his sentencing. So I don't think there's any prejudice at all here. And of course we need to look at federal criminal procedure 11H to decide if there's harmless error. We can say that there is harmless error. It's true that the trial judge should not go over the plea waiver explicitly with Mr. Richardson. But the rights that she outlined are the rights contained in the plea waiver. They're the same rights that he's trying to vindicate on appeal. And so he really hasn't suffered any prejudice in this situation. But of course the government also recognizes that there's still the so he hasn't waived that. And I'd like to discuss that a little bit. Back up just a minute. Are you conceding that the penance and guidelines issue is before us? I thought the reason we're talking about the waiver is that that's not encompassed within the terms of the waiver. I think it's before the courts in a different way than appellant wants it to be in front of the court. I think appellant essentially wants it to be in front of the court in two different ways. First to say this court should reach the merits of whether the guidelines range was calculated. That depends on him winning the waiver argument, right? That's correct, exactly. And our intention is that the court should not get to that issue. Right, good. But the court would still have to get to the issue in an indirect way because he's also alleging that his counsel was ineffective. Again we don't actually reach the sentencing issue unless we find the counsel was ineffective, right? That's correct, Your Honor. And we would argue that counsel was not inefficient. And so appellant's counsel essentially has two arguments on that. The first is the guidelines issue and that the, it is the appellant's counsel should have challenged the guidelines calculation. But the guidelines calculation was not wrong. It's true that you're not supposed to take into account the loss. But that is not what was taken into account here. The calculation that was used was the amount of laundered funds exactly as the guidelines requires. So I think it's useful to just go over the amounts very briefly. It's true that the loss is under $550,000. $550,000 is the threshold. It's true that the loss is below that. But the amounts received into the money laundering accounts, the fraudulent accounts that were set up by appellant and his co-conspirator, were over $600,000. And in fact the court, the trial court made that explicit finding. That's on JA 113. The court found that appellant and his co-conspirator were responsible for laundering over $600,000. So the only real dispute here is whether the $95,000 of frozen funds counts. And of course, we talked this at length in our brief, but it does. As the Chief Judge has pointed out, the only two cases that have decided this issue have found that it counts. And I think appellant's counsel is trying to place a lot of emphasis on this amendment that happened in 2001, that somehow changed the ballgame. But it didn't change the ballgame with regards to this definition. Even though the definition moved from value of funds to value of laundered funds, there's nothing in those 2001 amendments that narrowed the definition that courts have been using before. Nor did the Sentencing Commission express any disfavor towards Tansley or Thompson, these cases that had decided before. There's no evidence that that amendment, the motivation of that amendment, was to change the way the courts had calculated the value of these funds, now laundered funds, that the trial court should use in sentencing. Okay, Mr. Bernie, can I ask you a question on just the standard that we're applying here? So for ineffective assistance purposes, under our decisions, in normal situations, we remand for resolution of an ineffective assistance claim, since in our court, we allow for them to be raised on direct appeal and remanded as opposed to being raised on collateral review, as other standard to determine whether to remand at all or whether just to reject the claim outright in the first instance in our court. It's the case that we only elect not to remand if there's not even a collateral claim on the performance prompt. Is that right? Well, I think this court typically does not remand when the, yes, the evidence below suggests that a remand would be unnecessary. Um, and here we would contend that there is no necessary, there's no need for a remand. I guess what I'm saying, I mean, I know at some point it's whether remand is necessary, but the question is, under what standard do we determine necessity? I don't, I don't understand us to be applying effectively a, um, in the first instance de novo standard to decide what the right answer is on the performance prong. It is that there's not even a collateral claim on performance. Now, sometimes we've said there's not a collateral claim or we've said it's obvious that there's no prejudice, but I'm just, you've gone through the guidelines issue and there was a lot of pages expended in the briefing on it. Um, you're of course raised the point about the prior decisions exactly on frozen funds. I'm just trying to understand how much of an argument does the appellant need to have in order to at least just get a remand, not to win ultimately on ineffective assistance, but just to get a remand and get a chance to win in front of the district court. Is it right that as long as, um, they show the, this appellant shows just a colorable argument on the issue, even if we think it's probably more likely than not a losing one, as long as it's a colorable one, do they get the benefit of remand? So the main case that I've looked at for that, your honor is, uh, Sitzman. Um, and, well, and and it says there, so for instance, it says, however, in some cases, the record is so clear that remand is unnecessary. Um, and then in six minutes, when the record clearly shows that the challenge attorney's actions were not deficient, but when the record clearly shows, but I think there needs to be a clear showing that the Mr. Richardson was not prejudice or that his client was not efficient. And we would argue that there is that clear showing here, the clear showing on why he wasn't efficient is because a lot of briefing has been spent on this issue. Of course, I would just, and I see my time is running out, but I would just know whether the funds are included or a very complex issue, which so far again, the cases have gone the way that they are included. And so it would be great. I don't think council should be faulted for not anticipating this challenge in the law. The case law to this point has indicated that they should be included on the prejudice point. Mr. Richardson got a sentence in the guidelines range that he wants. He wants a range of 36 to 46 months. He got 40 months, the trial court very downward to make that happen. And the trial court went to a very detailed analysis in the sentencing. So this was a very thorough sentence saying what she made clear. She was imposing this aside from the guidelines. So even if a trial council had spoken up, there's, there's really no likelihood that it would have been different. And I see my time's about to run out or has run out. So I'm happy to answer any further questions, but if not, we would ask that this court enforce the waiver and otherwise affirm. Thank you. Thank you, Mr. Bernie, Mr. Kaplan. I think you had a little bit of time left. We'll give you, we'll round it up to two minutes for rebuttal. Thank you, Your Honor. And I'll be brief. The key point I want to emphasize is in the sentencing guidelines as they're revised, it refers to the value of the laundered funds. And in our view, that's perfectly clear. It means the value of the laundered funds. Now, there was some disagreement among the circuits prior to the, I think it was the 2001 change in sentencing. So it's possible the government's right. Maybe the, the purpose of that change was not to change the meaning, but to clarify the meaning with the sentencing commission, believing that some of the circuits had misinterpreted that language. But that's what the guidelines say, and that's what they mean. And in our view, trial counsel was clearly ineffective by not bringing that, the language to the attention of the, of the trial court. The government says that there's no prejudice because the client received the sentence he wanted. Of course, he didn't receive the sentence he wanted, he received the sentence that the court felt was appropriate. He wanted, in fact, I think his specific request was a home detention. And again, going back to the first issue that we discussed, whether the trial court's statement on the sentencing issue were, was misleading. It was misleading. It told, I mean, a reasonable understanding what trial court said is that these are, you give up rights by pleading guilty. These are the rights you give up. He was giving up the rights by pleading guilty. He was. It is also true that that pleading guilty involved a waiver, but by pleading guilty, if he had not entered that plea that day, he wouldn't have given up those rights, would he? I'm sorry, your honor. If he had not entered that plea that day, he would not have waived those rights. He did plead and he waived the rights. I have difficulty following why that's misleading. Your honor, I think the argument is that he didn't give up those rights by the act of pleading guilty. He gave up those rights because he opted to enter into a plea agreement. Right. Right. And that was the circumstance that existed that day. And he knew it. And the court knew it. And the court spoke consistently with it. And I'm just really not finding a lot to sympathize with your counsel. I don't see the misleading element. I think it's just that he did not understand that he had the right to plead guilty and retain. There's no evidence that he knew that he had the right to plead guilty and retain his rights. But, you know, as we've discussed, even setting aside that particular waiver argument, we think we should prevail in effective assistance. Counselor, thank you. Thank you. Okay. Thank you, counsel. I want to make sure my colleagues don't have additional questions for you. No. Thank you, counsel. Thank you to both counsel. Mr. Kaplan, you were represented by the court to assist the appellant in this matter. And the court thanks you for your assistance. We'll take this case under submission.
judges: Srinivasan, Rao, Sentelle